The **UNITED STATES**, Appellant,

v.

**ROCKWELL IMPORT CORP.**, Appellee.

**Customs Appeal No. 76–36.**

United States Court of Customs and Patent Appeals.

Oct. 20, 1977.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Chief, Customs Section, Sidney N. Weiss, New York City, for the United States.

Busby, Rivkin, Sherman, Levy & Rehm, New York City, attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

Appeal by the Government from a judgment of the United States Customs Court, 76 Cust.Ct. 262, C.D. 4664, 422 F.Supp. 279

(1976), sustaining Rockwell Import Corporation's protest of the classification of imported sweetened chocolate coating under item 156.47, Tariff Schedules of the United States (TSUS), as "Confectioners' coatings and other products (except confectionery) * * *." The Customs Court held classification to be proper under item 156.25, as "Chocolate: * * * Sweetened: In bars or blocks * * *." We reverse.

## Issue

The issue is whether the imported sweetened chocolate coating is properly classifiable as sweetened chocolate in bars or blocks or as confectioners' coatings and other products (except confectionery).

## Statute

The pertinent items and headnotes from TSUS, 19 USC 1202, are:

Schedule 1, Part 10, Subpart B. Cocoa

*Subpart B headnote*:

1. The term "chocolate", as used in this subpart, shall be limited to products (whether or not confectionery) consisting wholly of ground cocoa beans, with or without added fat, sweetening, milk, flavoring, or emulsifying agents.

Chocolate:

* * * * * * *

Sweetened:

| | |
|---|---|
| Item 156.25 | In bars or blocks weighing 10 pounds or more each .................... |
| Item 156.47 | Confectioners' coatings and other products (except confectionery) containing by weight not less than 6.8 percent nonfat solids of the cocoa bean nib and not less than 15 percent of vegetable fats other than cocoa butter ... |

## The Imported Merchandise

The imported merchandise was manufactured by Chocolat Suchard, S. A., a Swiss manufacturer of chocolate, confectionery and cocoa powder. The merchandise was described on invoices as "Gianduja sweet chocolate coating." The only witness at trial, Mr. Robert Tanner, of Chocolat Suchard, testified that the imported merchandise was of the following composition:

| | | |
|---|---|---|
| Chocolate liquor | 19.875 | percent |
| Sugar powder | 40.601 | " |
| Hazelnut butter | 33.219 | " |
| Cocoa butter | 5.962 | " |
| Lecithin | 0.341 | " |
| Vanillin | 0.002 | " |

Mr. Tanner further testified that chocolate liquor is the whole cocoa bean refined (ground) after shelling and roasting and consists of 50 to 58% cocoa butter, the balance cocoa powder, that sugar powder is beet or cane commercial sugar, and that hazelnut butter is a liquid paste produced by grinding cleaned and roasted hazelnuts. The witness also testified that hazelnut butter contains 60 to 65% hazelnut oil, but that it was added to give a hazelnut flavoring, there being no solid hazelnut particles that could be felt by the human tongue. Cocoa butter was added because the formula called for more than that contained in the chocolate liquor. Lecithin is an emulsifier and vanillin an artificial flavoring.

Mr. Tanner admitted that the imported chocolate contained at least 6.8% nonfat solids of cocoa bean nib, but stated that the formula did not contain vegetable fat because the hazelnut butter was added as flavoring and not as fat.

The hazelnut chocolate was imported in 60-pound slabs, to be remelted by the customer. The witness testified that the imported chocolate would not be known in the trade as a confectioners' coating because cocoa butter and hazelnut oil are too expensive for such coating. The witness distinguished [1] "regular chocolate" from "confectioners' coatings," saying the latter contains (1) cocoa powder as a substitute for chocolate liquor, and (2) vegetable fats with higher melting points than cocoa butter.[2]

## Customs Court

Noting that the ingredients in the imported merchandise, excepting hazelnut butter, are associated more with production

---

1. The witness agreed with the distinctions found in L. Cook, *Chocolate Production and Use* 215 (1963).

2. The melting point of cocoa butter is 33°C, that of hazelnut oil 0°C.

of chocolate than with production of confectioners' coating, the Customs Court did not consider classification as confectioners' coatings under item 156.47 as proper unless the presence of hazelnut butter so required.

The court distinguished those cases holding that the presence of nuts precluded classification under sweetened chocolate provisions of predecessor Tariff Acts, including *C. J. Van Houten & Zoon, Inc. v. United States*, 48 CCPA 116, C.A.D. 775 (1961), as dealing only with the presence of solids, whereas the hazelnut ingredient was here added as a liquid. Recognizing that this Court had considered crushed hazelnuts more than mere flavoring, *C. J. Van Houten & Zoon, Inc. v. United States, supra,* and that the TSUS had preserved the posture of the courts respecting nuts and flavoring in chocolate under predecessor tariff acts, the Customs Court nonetheless viewed the presence of hazelnut butter, expressly added as a flavoring agent, as consistent with the statutory definition of chocolate.

The court relied upon *Border Brokerage Co. v. United States*, 62 Cust.Ct. 624, C.D. 3836 (1969), which involved the presence of coconut oil in chocolate, and in which it was concluded, with respect to the fat there added, that there are no quantitative restrictions on statutorily specified ingredients under the TSUS. Thus, the court did not view 33% hazelnuts as precluding classification as chocolate in the present case.

## OPINION

Resolution of the issue turns on the function of the hazelnut butter ingredient. Our analysis of evidence convinces us that hazelnut butter is present as hazelnut oil and also as a flavoring agent. We think Congress intended to separately classify such chocolate products under item 156.47, TSUS.

In the testimony, "hazelnut butter," "refined hazelnut," and "hazelnut paste" were interchangeably used to describe the product of refining (grinding) the whole hazelnut, with nothing added or taken away. The hazelnut butter ingredient may be considered as: (1) finely crushed hazelnuts, (2) a hazelnut flavoring agent, or (3) having hazelnut oil and hazelnut flavoring components.

The courts have repeatedly held that the presence of nuts in imported products referred to as "chocolate" precluded classification of such products under the sweetened chocolate provisions of the Tariff Acts. *C. J. Van Houten & Zoon, Inc. v. United States, supra* (Tariff Act of 1930); *A. Herzog & Co. v. United States*, 56 Treas.Dec. 435, T.D. 43666 (Cust.Ct.1929) (Tariff Act of 1922). In enacting TSUS, Congress intended to continue the established classification practices:

> In subpart B the provisions relating to cocoa have been brought together. The headnote is new and represents an effort to settle a question that has come up from time to time concerning the classification of sweetened chocolate and chocolate containing nuts, fruits, etc. The headnote would continue the practice of classifying sweetened chocolate under the provisions for chocolate (items 156.25 and 156.30) even though it may be regarded as confectionery, and the practice of classifying such chocolate containing added ingredients such as nuts, fruits, etc., under the provision for confectionery (items 157.10 and 157.11). [*Tariff Classification Study*, schedule 1, 163 (1960)]

If the present hazelnut butter were in the form of finely crushed nuts, the cited judicial precedent and Congressional intent would control. It is, however, in liquid form, and so intermixes with other ingredients as to be evenly dispersed throughout the product. We agree with the Customs Court that *liquid* hazelnut butter is not equivalent to chopped nuts retaining separate identity as solids. In denominating the hazelnut butter as merely a flavoring agent, the Customs Court, as above indicated, reasoned that use of 33% hazelnut butter as flavoring was consistent with the statutory definition of chocolate because, as held in *Border Brokerage, supra,* there are no quantitative restrictions on the statutorily named ingredients under the TSUS chocolate provisions.

In our view, the hazelnut butter added here must be considered as both hazelnut oil and as a flavoring agent. Though the sole witness testified that hazelnut butter was added primarily as flavoring and that cheaper vegetable oils would be used if the only goal were a smoother product, we cannot ignore other evidence of record: (1) Hazelnut butter contains 60–65% hazelnut oil (final product contains 20%); (2) The witness testified that hazelnut butter so increases smoothness as to give the product a "melt-in-your-mouth" quality; and (3) Plaintiff's Exhibit 1 specifically refers to hazelnut butter as "hazelnut-oil 8F flavoring components." The hazelnut oil portion of the hazelnut butter cannot, therefore, be considered as a flavoring agent.

When both hazelnut oil and flavoring components of the hazelnut butter ingredient are considered, the product meets all the specific ingredient requirements of item 156.47, TSUS. The importer's witness admitted that the product does not contain less than 6.8% non-fat solids of cocoa bean nib. As noted above, the imported product contains not less than 15% (about 20%) hazelnut oil. Under the commonly accepted meaning of the term "fat," there is no chemical difference between a fat and an oil. The term "fat" encompasses solid fat and liquid fat (oil).[3] Hazelnut oil

being a vegetable fat, the product does not contain less than 15% of vegetable fat other than cocoa butter.[4]

There was testimony that the imported product was not a confectioners' coating because confectioners' coatings typically call for cocoa powder instead of chocolate liquor and fats cheaper than cocoa butter and hazelnut oil. However, an imported product need not be a confectioners' coating to fall within item 156.47, TSUS, which includes "other products (except confectionery)."[5]

The Customs Court specifically, and correctly, found that the imported product is not ready for consumption, and is not, therefore, "confectionery" within the meaning of that term in Subpart C of Part 10, Schedule 1, TSUS.[6] Thus the imported product cannot be excluded, as "confectionery," from item 156.47, TSUS.

The hazelnut butter ingredient, having hazelnut oil and flavoring components, precludes the imported product from meeting all specific requirements of the chocolate provision, item 156.25, TSUS. The flavoring component can be considered "flavoring" within the definition of "chocolate" in the Subpart B headnote, but the hazelnut oil component is not "added fat," as that

---

3. Fats and oils constitute a well-defined class of neutral substances, soluble in ether and other organic solvents but not in water, that are produced in some quantity by all plants and animals. Commercial fats and oils are derived, however, from a relatively few members of the plant and animal kingdom, in which they appear in quantity and in an easily available form. * * *.

Except for minor amounts of impurities, some of which are removable by refining treatment, fats and oils consist of triglycerides * * * or esters of glycerol * * * and high-molecular or long-chain aliphatic acids, both saturated and unsaturated, known as fatty acids * * *. * * * There is no rigid distinction to be made between "oils," which are liquid, and "fats," or "butters" or "tallows," which are solid or semisolid at ordinary atmospheric temperatures; for example, coconut oil is sometimes called coconut butter. For simplicity, the term "fat" is often used, and will be used here, in referring to either the liquid or solid

forms. [6 *Kirk-Othmer Encyclopedia of Chemical Technology* 140–41 (1951).]

See *Border Brokerage Co. v. United States, supra* (coconut oil is a vegetable fat).

4. The sole witness testified that hazelnut butter was added only as flavoring, but that testimony merely states a purpose for adding hazelnut butter, and does not establish that hazelnut oil is not a vegetable fat.

5. The Customs Court appears to have limited its consideration of item 156.47, TSUS, to confectioners' coatings.

6. TSUS Schedule 1, Part 10, Subpart C, headnote 2 provides:

The term "confectionery," as used in this subpart covers confections or sweetmeats ready for consumption. This subpart does not cover all confectionery (see Subpart B of this part, Part 9 of Schedule 1, and Subpart B of Part 15 of Schedule 1 for other provisions covering confectionery).

term is used in the definition of chocolate. The imported merchandise falls within the group of chocolate products containing vegetable fats other than cocoa butter which Congress clearly intended to be classified under item 156.47, rather than under item 156.25, as evidenced by the legislative history.

As originally proposed, the TSUS included the present definition of chocolate but not item 156.47. When item 156.47 was added, its purpose was explained in the *Tariff Classification Study, Sixth Supplemental Report* 1 (May 23, 1963):

> *Explanation*: This change is required to clarify the status of certain related products containing cocoa or chocolate and vegetable fat other than cocoa butter. These products include confectioners' coatings, coatings for ice cream bars, and simple mixtures of cocoa or chocolate and vegetable fat. Although aggregate imports are not large, classification problems are involved. Some imports have been assessed with duty at the rate of 17.5 percent ad valorem under paragraph 708(c), Tariff Act of 1930, other imports at 20 percent under paragraph 1558, but most imports have been assessed by virtue of the similitude doctrine at the rate of 0.8¢ per lb. applicable under paragraph 777(b) to sweetened chocolate in bars or blocks. The proposed rate of duty is an estimated weighted average of the existing rates.

Congress thus intended to preclude assessment of chocolate products containing vegetable fat other than cocoa butter at the rate applicable to chocolate, either directly, by classification as "chocolate," or indirectly by similitude. Therefore, when an imported product meets all the specific requirements of item 156.47 and the classification choice is between item 156.47 and one of the chocolate provisions, items 156.20–156.30, the term "added fat" in the definition of

chocolate must be read to comprise only added cocoa butter.[7]

### Conclusion

The imported merchandise having met all requirements of item 156.47, TSUS, and being outside the ambit of item 156.25, TSUS, the judgment of the Customs Court is reversed.

---

7. We express no view on the meaning of "added fat" under circumstances other than those now before us. The Government asserts that cocoa butter is the only "added fat" recognized by the industry as acceptable in achieving the desired consistency of chocolate products containing sugar and milk. Whatever the truth of that assertion, our holding does not define "added fat" for all possible applications of the definition of chocolate, but only as it relates to products which otherwise meet the specific requirements of item 156.47, TSUS.